INDUSTRIAL NATIONAL BANK OF PROVIDENCE, *Trustee*
*vs.* GEORGE D. DYER *et al.*

MARCH 13, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. This is a bill in equity for the construction of the will of Martha Taylor, late of the town of West Warwick, deceased, and for instructions to the trustee thereunder as to the distribution to be made of a portion of the corpus of the trust, the trust having terminated. After the cause was ready for hearing in the superior court for final decree, that court pursuant to the provisions of G. L. 1956, §9-24-28, duly certified the cause to this court for our determination.

The will was executed by the testatrix on November 11, 1948. She died on December 2, 1948, and the will was admitted to probate on December 8, 1948. The testatrix made therein several pecuniary bequests to specified individual legatees, three of these individual legatees being respondents in this cause, and one bequest to a religious institution.

Disposition of the residual estate is made in the fourteenth clause of the will wherein the residue is devised and bequeathed to the Industrial Trust Company of Providence in trust with direction that the net income thereof be paid over in quarterly installments "to my daughter, Doris Manton Martin, for the period of her natural life." There is also a provision therein authorizing the trustee in its discretion to make disbursements from the corpus of the trust on behalf of the testatrix's said daughter, and thereafter further provision is made for the distribution of the corpus at the time of the termination of the trust as follows: "Upon the death of my said daughter, Doris Manton Martin, I direct my said Trustee to divide whatever may remain in my estate as follows: one-quarter ($\frac{1}{4}$) to Saint Mary's Home for Children, in North Providence, Rhode Island; one-quarter ($\frac{1}{4}$) to Saint Elizabeth Home of Providence, Rhode Island; and one-half ($\frac{1}{2}$) to be divided equally among my nieces and nephews then surviving, and to be discharged of its trust."

Doris Manton Martin died on March 2, 1960, and with her death the trust terminated. It appears from the record that four of the nieces and nephews of the testatrix survived Doris Manton Martin. Three of those surviving were Florence Jillson Sullivan, Lester Earl Paine, and Raymond Dyer, hereinafter referred to as the respondents. A fourth nephew survived the beneficiary, namely, respondent George D. Dyer, hereinafter referred to as George D. Dyer, whose whereabouts was unknown at that time.

Thereupon the trustee, acting pursuant to the provisions of G. L. 1956, §18-6-2, petitioned the superior court for permission to pay into the registry of that court an amount of money which in its opinion would be due George D. Dyer, alleging in said petition its inability to locate him. The respondents opposed the granting of this petition and, filing an answer in the nature of a cross petition, prayed that the prayer of the trustee be denied and that a decree be entered ordering payment to them in equal shares of one half of the amount of the corpus of the trust remaining in the custody and possession of the trustee. In the course of this proceeding the superior court appointed a guardian ad litem to represent the interests of the nephew George D. Dyer. Through the efforts of the guardian ad litem George D. Dyer was located, and thereupon by agreement of the parties the petition of the trustee pursuant to §18-6-2 was discontinued.

It is not disputed that George D. Dyer is a nephew of the testatrix. It appears from the evidence that he was born in Cranston in 1902 and lived there with his parents until the summer of 1920. At that time he left home without explanation and thereafter he never did communicate with any member of the family. It appears that he did not attend the funerals of his parents and that until February 1961 his whereabouts was completely unknown.

The trustee now brings the instant bill of complaint and alleges therein that respondents have made demand upon

it in its capacity as trustee for payment of one half of the corpus of the trust remaining in its hands, and it further alleges that it is in doubt as to the proper construction to be given to that provision of the fourteenth clause of the will that relates to the distribution of the assets of the trust which remain in its hands upon the termination thereof. It thereupon asks the court for an instruction, first, as to whether George D. Dyer should share in the distribution of the one half of the corpus remaining in the trustee's hands with respect to which the will directs a distribution thereof "equally among my nieces and nephews then surviving." In the second inquiry the court is asked to instruct the trustee as to whether the cost of the proceeding undertaken pursuant to §18-6-2 is to be charged against the general assets of the trust under the fourteenth clause of the will or whether it is to be charged against the one half of the remaining assets that under said clause are to be distributed to the nieces and nephews who survive the death of the beneficiary.

The respondents contend that the pertinent portion of the residuary clause of the will cannot be so construed as to include George D. Dyer among those entitled to share in the distribution of one half of the assets remaining in the corpus of the trust. In support of this position they argue that when the will is considered in its entirety, it discloses an intent on the part of the testatrix to give the remaining one half of the assets in equal shares to those of her nieces and nephews who were designated in prior provisions of the will as individual legatees and who survived the death of the beneficiary of the trust fund. In other words, they argue, as we understand them, that the testatrix did not intend to make a gift to a class in directing that the remaining half of the assets be distributed in equal shares among her nieces and nephews who survived her daughter.

George D. Dyer, on the other hand, contends that the

pertinent provision of the residuary clause reveals a clear intention to make a gift to a class, the membership of which would be determined at the death of the beneficiary and who would then be entitled to share equally in one half of the remaining assets of the trust. He argues that there is nothing contained in the pertinent provision of the residuary clause that can be reasonably held to obscure such intention of the testatrix. By clear implication this is to argue that respondents are attempting to import ambiguity into an otherwise unambiguous instrument by contending that membership in the class contemplated in the residuary clause is controlled by other provisions of the will, that is, that the identity of those nieces and nephews who would be entitled to share in the remainder of the residue if they survived the beneficiary is those nieces and nephews who were designated in prior provisions of the will as specific legatees.

A testamentary gift ordinarily will be held to constitute a gift to a class where an aggregate sum is given to a group of persons who at the time of the gift are uncertain in number but who are to be ascertained at some future time when all who constitute the class will take an equal or other definite proportion, the amount of the share of each being dependent upon the number that ultimately constitutes the class. *Rhode Island Hospital Trust Co.* v. *Proprietors of Swan Point Cemetery,* 62 R. I. 83, 94; *Hazard* v. *Stevens,* 36 R. I. 90, 98. The provision of the residuary clause that is here being considered, in our opinion, is within the purview of the language used in the cases cited above. The respondents urge, however, that if that provision is viewed in the light of the circumstances that surrounded the execution of the will, when, it is urged, the testatrix believed George D. Dyer dead, it becomes clear that she intended to give this portion of the residuary estate to those of her nieces and nephews named in the will as specific legatees who survived the trust beneficiary.

The respondents, in so arguing, overlook a fundamental principle of law concerning testamentary gifts. It is well settled that when the dominant intent of a testator is made clear from an examination of the whole will, any resort to the rules of testamentary construction is unnecessary. Reference to these rules of testamentary construction is warranted only when the instrument is ambiguous so far as the intent of the testator is concerned. *Sawyer* v. *Poteat,* 90 R. I. 51, 56. We are of the opinion that this contention is untenable in the light of the view taken in *Industrial Trust Co.* v. *Wilson,* 61 R. I. 169. This court said at page 179 of that opinion: "When the language of the testator is clear and explicit, it must prevail, notwithstanding another rule of construction which provides that the court shall put itself in the situation of the testator with reference to the property and relative claims of the testator's family, his relations with them and the circumstances surrounding him when he drew his will, as this latter rule is intended for use merely as an aid to construction, or only when the provisions of the will are doubtful or admit of more than one interpretation." The language of the court indicates clearly that resort to this particular rule of construction is warranted only when the language in the will obscures the intention of the testator.

When the instant will is read in its entirety, it becomes clear that the testatrix intended to distribute such of the assets of the trust fund as remained after the death of the beneficiary thereof without reference to any prior provision of the will. Nowhere in the first thirteen clauses did she state in express terms that the bequests being made therein were to control the distribution of the residue of the estate. In the residuary clause she directed that one half of such assets as remained after the termination of the trust be distributed in equal shares to two charitable corporations, neither of which was included in the prior provisions of the will as a specific legatee. This direction we consider as be-

ing significant of her intention. In directing that the remaining half of the assets be distributed "equally among my nieces and nephews then surviving," she did not expressly limit the residuary legatees to those nieces and nephews who had already been made legatees under prior provisions. In such circumstances we will not read a limitation into a residuary clause under the guise of construing it.

In further support of their argument that the testatrix did not intend to make a gift to a class, respondents refer to the proposition that, where the language used in the will would be as consistent with an intention to make a gift to individuals as with an intention to make a gift to a class, the courts favor construing such language as constituting a gift to the individuals. *Chase* v. *Peckham*, 17 R. I. 385. This is a rule for testamentary construction that in an appropriate case may have application. However, in *Rhode Island Hospital Trust Co.* v. *Thomas*, 73 R. I. 277, this court noted that the question as to whether a gift is to individuals or to a class must depend entirely upon the intention of a testator. When that intention is clear, as we hold it to be in the instant case, like other rules of construction the above rule has no proper application.

The contention that the language of the pertinent portion of the residuary clause is ambiguous is predicated upon a conclusion developed by inference from the established fact that at the time of the execution of the will by the testatrix George D. Dyer had not been heard from for almost thirty years. Conceding that a reasonable inference drawn from an established fact is itself an inferential fact which may be of probative force, it does not follow that such an inferential fact may then serve as the basis for a further inference that would likewise possess some probative force. A conclusion reached by drawing inferences from inferences is never considered as being probative of an ultimate fact under any proper concept of judicial proof.

It is our opinion that the conclusion here that the testa-

trix intended to restrict the nieces and nephews referred to in the residuary clause to those who had been named as legatees in the prior provisions of the will derives from a series of inferences drawn from a prior inference based on the same established fact. Because we take this view, we are constrained to disagree with the contention that the language of the will obscures the intention of the testatrix. It is therefore our opinion that the question as to George D. Dyer's sharing in the distribution of one half of the assets of the estate remaining in the possession of the trustee at the termination of the trust should be answered in the affirmative.

The second question propounded in the bill of complaint, in effect, asks for an instruction concerning the proper allocation to be made of the expenses incurred in the prosecution of the petition brought pursuant to §18-6-2 under which the trustee sought to be discharged from the trust upon payment into the registry of the court of the share of the assets payable to George D. Dyer. That was a separate and distinct proceeding and raises no issue under the instant bill of complaint for a construction of the residuary clause of the will. For this reason we do not perceive that the subject matter of the second question is before this court under the instant bill of complaint. The proceeding brought under §18-6-2 does not constitute a part of the record that is now before us. However, it appears that that petition was discontinued without prejudice by agreement of the parties when George D. Dyer was located by the guardian ad litem appointed therein.

It is our opinion then that the second question neither arises out of nor has any relationship to the issues raised in the instant proceeding. In this circumstance it was not properly brought before us by certification of the instant cause under the provisions of G. L. 1956, §9-24-28. We would note further that if in these circumstances we were to give the trustee a purported instruction as to which of

the remaining assets of the estate properly could be charged with the expenses of that proceeding, such opinion would be advisory in nature and not a decision of the court and clearly entitled to no weight. *G. & D. Taylor & Co.* v. *Place,* 4 R. I. 324, 362. The court therefore declines to answer the second question set out in the bill of complaint.

In answer to the first question propounded in the bill of complaint, it is our opinion that George D. Dyer should share in the distribution of one half of the assets of the estate which were to be distributed "equally among my nieces and nephews then surviving."

On March 20, 1963 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Hinckley, Allen, Salisbury & Parsons, Richard W. Billings, Jacques V. Hopkins,* for complainant.

*McElroy & Regan, Edward F. McElroy, James P. McElroy, Jr.,* for respondent George D. Dyer.

*Johnson & Johnson, Walter Johnson, Martin Johnson,* for respondents Florence J. Sullivan, Lester E. Paine, Raymond Dyer.

*Edwards & Angell, Stephen A. Fanning, Jr., Calvert C. Groton,* for respondents St. Mary's Home for Children and Saint Elizabeth Home.

*J. Joseph Nugent,* Attorney General, *Harold S. Moskol,* Special Assistant.