**Alonzo L. LUCAS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 17752.

United States Court of Appeals
Eighth Circuit.

March 30, 1965.

Murray L. Galinson, of Mullin, Galin-son & Swirnoff, Minneapolis, Minn., made argument for the appellant and filed type-written brief.

1

**2**

Sidney P. Abramson, Asst. U. S. Atty., Minneapolis, Minn., made argument for the appellee and filed brief with Miles W. Lord, U. S. Atty., Minneapolis, Minn.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant Alonzo L. Lucas has appealed from his conviction on an indictment charging him with sale of narcotics on October 1, 1963, in the city of Minneapolis, Minnesota, to Louis Gibson in violation of 26 U.S.C.A. § 4705. This case was consolidated for trial with another indictment against the defendant charging a violation of the same statute with respect to an alleged sale of narcotics to Louis Gibson on September 30, 1963, in the city of St. Paul, Minnesota. The consolidated cases were tried to a jury. Defendant was found guilty on the October 1 Minneapolis charge, from which conviction this appeal is taken, and was found not guilty on the September 30 St. Paul charge.

Defendant was represented at the trial by competent employed counsel of his own choice. Defendant has been permitted to take this appeal in forma pauperis. Murray L. Galinson of Minneapolis, Minnesota, who did not serve as trial counsel, has been appointed by this court to represent the defendant on this appeal. We commend Mr. Galinson for the excellent brief and oral argument presented on behalf of his client and express our thanks to him for the competent service he has thereby rendered.

Defendant at the close of the Government's case and again at the close of all of the evidence made a motion for acquittal. Such motions were renewed after verdict by motion for judgment n. o. v. Defendant in such motions contends, as he does here, that there is a fatal variance in the indictment in that any evidence as to sale relates to a sale to Preston, not Gibson, and upon the further ground that there is no substantial evidence to support a sale to Gibson.

Defendant's fatal variance contention is based upon the majority opinion in United States v. Raysor, 3 Cir., 294 F.2d 563. Upon the record before us, we need not and hence do not pass upon the validity of the fatal variance rule as stated in Raysor. Here the trial court accepted defendant's position that proof of a sale to Preston did not support the indictment charging a sale to Gibson and submitted to the jury defendant's instruction reading:

"In this case, the Government must prove beyond a reasonable doubt that there was a sale of narcotic drugs to Louis Gibson. It is not sufficient if the Government proves that there was a sale of narcotic drugs to John Preston."

The jury argument of counsel for each side treated the above instruction as being the law of the case. The instruction given completely eliminates any reasonable possibility that the defendant could have been convicted on the basis of a sale to Preston rather than Gibson. We note that in connection with the indictment charging a sale in St. Paul with respect to which the evidence as to a sale to Gibson was somewhat weaker, the jury acquitted.

Before passing upon the sufficiency of the evidence to support the conviction, we will consider defendant's assertion that the court erred in permitting the Government to reopen its case. After the Government had rested, defendant moved for an acquittal. In the course of the argument upon the motion, the court expressed a leaning toward sustaining the motion upon the basis that there was insufficient evidence to support a sale to Gibson. Thereupon the United States Attorney advised the court that Gibson had been delayed by weather in reaching Minneapolis for the trial and that he had not had an opportunity to review the notes which he had made at or near the time of the sales and turned in to his superiors before he testified. He had now had an opportunity to examine such

notes and that had refreshed his recollection and that he desired to offer additional testimony to show the sales had been made to him. The court permitted the Government to reopen and to recall Mr. Gibson as a witness.

■ The trial court has a large discretion with respect to order of proof and permitting a party to reopen its case after it has rested. United States v. Williams, 2 Cir., 336 F.2d 183, 184; Powell v. United States, 113 U.S.App.D.C. 255, 307 F.2d 396; Henry v. United States, 6 Cir., 204 F.2d 817, 820; Jianole v. United States, 8 Cir., 299 F. 496, 500.

■ The Government was permitted to reopen the case before defendant had offered his testimony. Defendant had a full opportunity to meet the additional evidence offered. It is unlikely that the additional evidence was of such a nature as to require the allowance of additional time to prepare a defense. No continuance was requested. The additional evidence offered after reopening was no more detrimental to defendant's cause than such evidence would have been if it had been offered originally. The court did not abuse its discretion in permitting the Government to reopen its case.

■■ We are satisfied that there is substantial evidentiary support for the guilty verdict when under the well-established standards of review the evidence is viewed in the light most favorable to the Government as the prevailing party.

The evidence establishes that Lucas made a sale of the narcotics to either Preston or Gibson in the hotel at Minneapolis on October 1, 1963. Defendant admits that he made a transfer of narcotics and received payment of the purchase price. It is also undisputed that the item sold was a narcotic within the meaning of the statute and that the sale was not made in performance of a written order of the person to whom the drug was sold on a prescribed form. The only real controversy is as to whether Gibson or Preston was the purchaser.

Gibson is a Government narcotic agent. Preston is a special employee of the Bureau of Narcotics, also referred to in the record as an informer. Both Gibson and Preston were engaged at the time here material in securing evidence against narcotic violators in the Twin City area. Preston had developed an acquaintance with the defendant. On September 30 in St. Paul, defendant in the presence of Gibson and Preston made a sale of narcotics in connection with which he handed the drugs to Preston. The agreed purchase price was handed by Gibson to Preston, who then turned the money over to defendant.

On October 1, Preston and Lucas came to Gibson's room at the Harmon Hotel in Minneapolis. Gibson, when recalled as a witness, testified:

"Mr. Lucas came into the room in the company of the informant, he asked how many capsules we wanted, this time it was in general. I said two capsules. He removed from a tissue, he had tissue paper, and in the tissue paper was a tin foil paper that contained several capsules. He took two capsules out, put it on the dresser and after he placed them on the dresser I then counted out twenty dollars, give it to the informant and the informant in turn gave it to Mr. Lucas."

In Gibson's cross-examination is the following:

"Q. He said to you, 'What do you want now,' is that right, he said, 'What do you want now,' didn't he?

"A. He did say that.

"Q. And what did you say?

"A. I said, I wanted two caps."

In the presence of the defendant, Gibson handed the $20 agreed purchase price to Preston, who handed it to the defendant. Both Gibson and Preston testified that the defendant placed the two narcotic capsules purchased on the dresser in Gibson's hotel room and that shortly thereafter Preston and the defendant left the room, the capsules then remaining on

the dresser. Preston occupied a separate room at the hotel.

Gibson, on his initial appearance as a witness, had testified that Preston had asked for the two capsules. When asked to explain the discrepancy in his testimony, Gibson stated that he had not reviewed his notes when he first testified, that he had since done so, and that he had thereby refreshed his memory and that the testimony last given was true. His notes were made available to defendant's counsel.

The question of the credibility of the witnesses was for the jury to resolve. The trial court fairly told the jury in its instructions:

"You have got to evaluate the testimony of Mr. Gibson. I suppose it loses some of its credibility because he was indistinct when he testified first as to the specific act of who handed what and who gave the money and so forth. Later on he came back and modified his testimony in some respects. If he hadn't done that and told the same story at the first instance I suppose you would attach more credibility to him."

Gibson's evidence, if believed, is adequate to support a jury finding of a sale to him. Obviously the jury, as manifested by its verdict, credited Gibson's testimony. It is true, as urged by the defendant, that the trial court in the course of the arguments on the motions for acquittal expressed serious doubt about the sufficiency of the evidence to support conviction. The trial court in overruling defendant's motion for judgment n. o. v., after giving full consideration to the law and evidence, states in his order:

"The first two grounds are without merit. As to the third ground, review of the transcript of the proceedings reveals that there was not a fatal variance, but a conflict in the proof. Resolution of this conflict was properly the function of the jury, and viewing the evidence and inferences therefrom which is most favorable to the prosecution, United States v. Segal, 147 F.Supp. 506, 507 (D.Minn.), aff'd 246 F.2d 814 (8th Cir.), cert. denied, 355 U.S. 894, 78 S.Ct. 269 [2 L.Ed.2d 192] (1957), the Court is satisfied that the jury's verdict is based upon sufficient evidence."

■ Defendant next asserts that the court committed error in permitting cross-examination of the defendant with respect to the whereabouts of Sonny Carter, a person who was present at a conversation between Preston and the defendant just prior to their departure for the Gibson hotel room. The short answer to such contention is that no challenge was made to such evidence in the trial court by objection, motion to strike, or otherwise. Error cannot be predicated upon the reception of evidence with respect to which no challenge has been made in the trial court. Kreinbring v. United States, 8 Cir., 216 F.2d 671, 673; Finnegan v. United States, 8 Cir., 204 F.2d 105, 111.

■ Lastly, defendant urges that the evidence shows a clear case of entrapment. We disagree. In any event, defendant failed to raise this issue in the trial court by asserting it as a ground for his motion of acquittal or by request for an entrapment instruction or in any other manner. In rejecting this contention, we repeat and adopt what Judge Vogel, speaking for this Court, said in answer to a similar contention in Ware v. United States, 8 Cir., 259 F.2d 442, 445, which is:

"As to the belated claim of entrapment, no mention thereof was made at the time of trial and we may not consider it here. Cofer v. United States, 8 Cir., 1958, 256 F.2d 221, 223:

" 'The function of this Court is to review only rulings made by a trial court on questions brought to its attention and passed upon by it. Ayers v. United States, 8 Cir., 58 F.2d 607, 608.' "

We have read with care the entire record. We hold that the defendant has in all respects had a fair trial and that the court committed no error prejudicial to defendant's rights.

Defendant's conviction is affirmed.